UNITED STATES DISTRICT COURT
For the Northern District of California

1
2
3
4
5
6
7
8

UNITED STATES  DISTRICT COURT

9

Northern District of California

10

San Francisco Division

11

KENNETH CLAIR,                                    No. 15-cv-3102 LB

12

              Plaintiff,              **ORDER OF DISMISSAL WITH**
                                                  **LEAVE TO AMEND**

13

    v.
                                                  [Re: ECF Nos. 1-1, 2]

14

V. TERRY; et al.,

15

              Defendants.

16

_____/

17

**INTRODUCTION**

18

    Kenneth Clair, a prisoner on death row at San Quentin State Prison, commenced this action by

19

filing a complaint in Marin County Superior Court. The defendants then removed the action to

20

federal court because the complaint alleged claims for violations of Mr. Clair's rights under the U.S.

21

Constitution and presented a federal question. The parties have consented to proceed before a

22

magistrate judge. (ECF Nos. 6, 7.[1]) The defendants have requested, pursuant to 28 U.S.C. § 1915A,

23

that the court screen Mr. Clair's complaint. This order screens the complaint, finds some claims

24

cognizable, but requires Mr. Clair to file an amendment to attempt to state a claim against three

25

defendants as to whom the complaint does not state a claim.

26
27

_____

28

    [1]Citations are to the Electronic Case File ("ECF"); pin cites are to the ECF-generated page
numbers at the tops of the documents.

**STATEMENT**

Mr. Clair alleges the following in his complaint.

Since 1987, Mr. Clair has been housed on death row at San Quentin. (ECF No. 1-1 at 7.) He has chronic shoulder problems that make it painful for him to be handcuffed with standard handcuffs.

On July 12, 2012, Mr. Clair was moved from the East Block to the Adjustment Center, a "disciplinary building," for a rule violation. (*Id.*) He was moved back to East Block on August 20, 2012, and his privileges were later restored. (*Id.* at 10.)

Before he was moved to the Adjustment Center, whenever Mr. Clair was taken out of his cell to be escorted to another location, he "would be placed in mechanical modified restraints (waist chains or extended handcuffs) that was approved by the chief Medical Officer" due to his chronic shoulder problems. (*Id.* at 8.) At the Adjustment Center, however, correctional officers insisted on using standard handcuffing techniques and standard handcuffs regardless of an inmate's medical needs. (*Id.*) This standard handcuffing technique required the inmate to "back up to the cell door, come to a half squat position, and place[] both hands through the tray slot" for the handcuffs to be applied. (*Id.*) The use of the standard handcuffing technique and the standard handcuffs caused pain for Mr. Clair.          Dr. Grant saw Mr. Clair on August 10, 2012, and was aware of Mr. Clair's right shoulder problems. Dr. Grant failed to write an order for modified mechanical restraints for Mr. Clair. (*Id.* at 8-10.)

On August 30, 2012, after Mr. Clair returned to East Block from the Adjustment Center, he was seen by Dr. Leighton and complained of renewed shoulder problems. (*Id.* at 10.) Dr. Leighton failed to adequately examine Mr. Clair's shoulders due to her failure to have his mechanical restraints removed.

Dr. Leighton saw Mr. Clair again on October 9, 2012. In response to Mr. Clair's complaints of muscle cramps and his inconsistent blood pressure readings, Dr. Leighton decided to stop one of Mr. Clair's medications and have his blood pressure checked for three weeks. (*Id.* at 12.) Dr. Leighton failed to be sure that her order was followed, and Mr. Clair's blood pressure was not checked.

On October 18, 2012, correctional officer Terry escorted Mr. Clair to a medical appointment in waist restraint handcuffs. (*Id.*) After the appointment, correctional officer Terry escorted Mr. Clair

UNITED STATES DISTRICT COURT
For the Northern District of California

back to his cell. While Mr. Clair was ascending a metal staircase, correctional officer Terry "abandoned her duties/post, to engage in talk and laughter with another officer(s)" and violated the prison's policy for hands-on escort of inmates. (*Id.* at 13.) Mr. Clair became dizzy, and fell while he was alone on the stairs. Mr. Clair broke his right hand, hit his head, and damaged his right shoulder. (*Id.* at 9.) Mr. Clair believes he suffered a concussion. Correctional sergeant Madding was the supervisor and failed to carry out her duties to instruct the staff to write an incident report and further investigate the incident. Instead, sergeant Madding "used her vested authority to cover up all misconduct of defendant V. Terry/other subordinate officers" and put Mr. Clair "back in harms way/substantial risk falling on the metal staircase again despite visible impaired physical mobility." (*Id.* at 14-15 (errors in source).)

Mr. Clair received inadequate treatment for his injuries from nurse Han and Dr. Garrigan for the injuries he sustained in the fall. (*Id.* at 15-17.) Among other things, these individuals failed to adequately address his concussion or symptoms of concussion. On October 22, 2012, Mr. Clair was taken to the prison hospital for treatment of injuries related to his fall. Dr. S. Garrigan did not take time to fully assess Mr. Clair's injuries and refused to write an order for him to stay off the stairs. (*Id.* at 19.)

Dr. Tootell, the chief medical officer, and Dr. Deems, the chief executive officer, "failed to implement adequate performance policies, effective grievance policies/investigation of doctors," and generally have allowed inadequate medical care to continue at the prison. (*Id.* at 18.) They learned of Mr. Clair's "medical needs, injuries and denial of adequate treatment through a medical complaint." (*Id.*)

Sergeant T.I. Johnson and correctional officer E. McNeel "collectively interfered with the treatment prescribed to the plaintiff" by Dr. Leighton by demanding that Dr. Leighton rescind the medical order that moved Mr. Clair from the third tier to the first tier so Mr. Clair could avoid stairs. (*Id.* at 19.)

Mr. Clair filed an inmate appeal regarding the rescission of his first tier medical chrono. Nurse Podolsky signed the December 12, 2012 first level response to that appeal. (*See id.* at 39.) Dr. Deems signed the January 24, 2013 second level response to that appeal. (*See id.* at 31-32.)

**ANALYSIS**

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id*. at § 1915A(b). *Pro se* complaints must be liberally construed. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

The Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials take reasonable measures for prisoner health and safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). For an Eighth Amendment claim based on the response to a prisoner's medical needs, the prisoner must plead and prove: (1) that he had a serious medical need, and (2) deliberate indifference to that need by the defendant, i.e., the prison official knows of and disregards an excessive risk to prisoner health and safety. *See Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). A serious medical need may exist if the "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citation and internal quotation marks omitted).

Liberally construed, the complaint states a cognizable § 1983 claim against Dr. Grant, Dr. Leighton, Dr. Garrigan and nurse Han for deliberate indifference to Mr. Clair's serious medical needs based on their responses to Mr. Clair's medical needs. Liberally construed, the complaint states a cognizable § 1983 claim against sergeant Johnson and correctional officer McNeel for deliberate indifference to Mr. Clair's serious medical needs based on their alleged interference with a doctor's order that Mr. Clair was to be housed on the first floor. *See Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999) ("allegations that a prison official has ignored the instructions of a prisoner's treating physician are sufficient to state a claim for deliberate indifference").

1    Liberally construed, the complaint states a cognizable § 1983 claim against correctional officer

2    Terry for deliberate indifference to Mr. Clair's safety based on her alleged failure to hold on to Mr.

3    Clair while he was in mechanical restraints on the staircase. *See Farmer*, 511 U.S. at 832 (Eighth

4    Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates).

5    The complaint does not state a claim against nurse Polosky or Dr. Weems for their handling of

6    Mr. Clair's inmate appeal. Any mishandling or failure to grant Mr. Clair's inmate appeal in the

7    prison administrative appeal system does not amount to a due process violation. There is no federal

8    constitutional right to a prison administrative appeal or grievance system for California inmates. *See*

9    *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.

10   1988); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (prison grievance procedure is

11   procedural right that does not give rise to protected liberty interest requiring procedural protections

12   of Due Process Clause); *Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993). Prison officials are not

13   liable for a due process violation for simply failing to process an appeal properly or failing to find in

14   Mr. Clair's favor.

15   The complaint does not state a claim against Dr. Tootell or Dr. Deems. Dr. Tootell and Dr.

16   Deems are not alleged to have been Mr. Clair's treating physician, and they apparently have been

17   named as defendants only because they were supervisors in charge of the prison's medical

18   operations. "Liability under section 1983 arises only upon a showing of personal participation by the

19   defendant. A supervisor is only liable for constitutional violations of his subordinates if the

20   supervisor participated in or directed the violations, or knew of the violations and failed to act to

21   prevent them. There is no respondeat superior liability under section 1983." *Taylor v. List*, 880 F.2d

22   1040, 1045 (9th Cir. 1989 (citations omitted). If Mr. Clair wishes to pursue a claim against either Dr.

23   Tootell or Dr. Deems, he must file an amendment in which he alleges what each of these defendants

24   did or failed to do that caused a violation of his rights. He should bear in mind that a supervisor may

25   be liable under § 1983 upon a showing of (1) personal involvement in the constitutional deprivation

26   or (2) a sufficient causal connection between the supervisor's wrongful conduct and the

27   constitutional violation. *See Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011).

28   The complaint also does not state a claim against sergeant Madding, who allegedly was the

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

supervisor in the unit at the time Mr. Clair fell down the stairs. Sergeant Madding allegedly caused the circumstances of Mr. Clair's fall to be inadequately investigated, but that does not amount to a constitutional violation because an inmate does not have a constitutional right to have his injuries adequately investigated and documented. Mr. Clair also alleges that sergeant Madding "cover[ed] up all misconduct" of correctional officer Terry. (ECF No. 1-1 at 15.) This allegation apparently is an effort to show some sort of conspiracy liability, but conclusory allegations of a conspiracy which are not supported by material facts are insufficient to state a claim. *See Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1161 (9th Cir. 2003); *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989). "'A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage.'" *See Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999) (citation omitted). A civil plaintiff "must show that the conspiring parties reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Id.* (internal citation and quotation marks omitted).  A conspiracy is not itself a constitutional tort under 42 U.S.C. § 1983, but may "enlarge the pool of responsible defendants by demonstrating their causal connections to the violation."  *Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012) (en banc). If Mr. Clair wishes to pursue a claim against sergeant Madding, he must file an amendment to his complaint in which he alleges what sergeant Madding did or failed to do that caused a violation of his rights. If he wishes to pursue her on a conspiracy theory, he needs to make nonconclusory allegations showing a conspiracy, and must identify the federal constitutional right of which he was deprived as a result of sergeant Madding's acts or omissions. If he wishes to pursue her on a supervisor liability theory, he needs to allege facts showing (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *See Starr*, 652 F.3d at 1206-07.

## CONCLUSION

The defendants' motion for the court to screen the complaint under 28 U.S.C. § 1915A is GRANTED. (ECF No. 2.) This order does the requested screening.

Liberally construed the complaint states cognizable § 1983 claims against Dr. Grant, Dr.

Leighton, Dr. Garrigan, nurse Han, sergeant Johnson, correctional officer McNeel, and correctional officer Terry. Nurse Polosky is dismissed because the complaint does not state a claim against her, and leave to amend appears to be futile. The claims against Dr. Tootell, Dr. Weems, and sergeant Madding are dismissed with leave to amend.

If Mr. Clair wishes to pursue claims against Dr. Tootell, Dr. Weems and/or sergeant Madding, he must file an amendment to his complaint no later than **September 30, 2015** in which he states a claim against each of these defendants and cures the deficiencies identified in this order. If Mr. Clair does not file an amendment by the deadline, the action will proceed against the remaining defendants and these three defendants will be dismissed.

The court has instructed Mr. Clair to file an *amendment* to the complaint rather than an *amended* complaint because he only needs to fix a small part of his lengthy pleading. The difference between an amendment to a complaint and an amended complaint is that an amendment will be read together with the original complaint to see whether a claim is stated, whereas an amended complaint will supersede the original and must state every one of a plaintiff's claims. If Mr. Clair files an amended complaint instead of an amendment to the complaint, any claim not included in the document will be deemed to be voluntarily dismissed. *See Lacey*, 693 F.3d at 928.

**IT IS SO ORDERED.**

Dated: August 28, 2015

_____
LAUREL BEELER
United States Magistrate Judge