UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| KENNETH CLAIR,<br><br>            Plaintiff,<br><br>      v.<br><br>V. TERRY, et al.,<br><br>            Defendants. | Case No. 15-cv-03102-LB<br><br>**SUMMARY-JUDGMENT ORDER**<br>Re: ECF No. 25 |

## INTRODUCTION

This is a prisoner's civil-rights case. Plaintiff Kenneth Clair is an inmate at San Quentin State Prison. He claims that, in various ways, the defendants (who are all prison officials) were deliberately indifferent to his medical needs. He sues through 42 U.S.C. § 1983 for alleged violations of his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution. The defendants have all moved for summary judgment against the whole complaint. (ECF No. 25.)[1] They contend that Mr. Clair failed to exhaust his administrative remedies before he filed this suit. Beyond the exhaustion issue, the court analyzes parts of the plaintiff's complaint under additional rules: namely, the general screening that is required by 28 U.S.C. § 1915A, and the basic pleading

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER (No.15-cv-03102-LB)

standards of 42 U.S.C. § 1983. The parties have all consented to magistrate jurisdiction. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. This matter can be decided without oral argument. *See* Civil L.R. 7-1(b). For the reasons given below, and as more specifically described below, the court partly grants and partly denies the defendants' motion.

## STATEMENT

**1. The claims**

The material facts are undisputed. Mr. Clair has been a San Quentin inmate since 1987. While in prison, he has had a history of chronic shoulder pain, erratic blood pressure, and, in a 2012 incident that figures prominently in this case, he lost consciousness and fell while being escorted up a metal staircase between cell-block floors. Mr. Clair was handcuffed at the time. When he fell, he broke his hand, cut his face, and possibly sustained other injuries.[2]

Mr. Clair brings three counts alleging that numerous prison officials were deliberately indifferent to his medical needs and so denied him his constitutional rights. Count I is directed to two defendants: Correctional Officer V. Terry and Sergeant C. Madding. His allegations against these defendants involve the incident in which he fell on the stairs. Most saliently for present purposes, Mr. Clair alleges that Officer Terry violated prison policy by taking his hands off Mr. Clair while escorting him up the stairs.[3] The implication is that, if Officer Terry had been holding on to him, Mr. Clair wouldn't have fallen. Mr. Clair alleges that Sergeant Madding, in violation of prison policy, did not "submit an incident report" or require the other officers who responded to the fall to "write a full report of [the] occurrence."[4] According to Mr. Clair, this "directly caused [him] to receive inadequate medical treatment following his fall."[5]

Count II is directed against six defendants: G. Han (a registered nurse); Dr. D. Leighton (who seems to have been Mr. Clair's primary physician); Dr. J. Grant (physician); Dr. S. Garrigan

---

[2] *See* Compl. – ECF No. 1-1 at 13 (¶ 37); Answer – ECF No. 24 at 8 (¶ 37).

[3] Compl. – ECF No. 1-1 at 13 (¶ 37).

[4] *Id.* at 21 (¶ 51).

[5] Am. Compl. – ECF No. 16 at 4 (¶ 4).

ORDER (No.15-cv-03102-LB)            2

(physician); Dr. E. Tootell (the prison's Chief Medical Officer); and Dr. A.W. Deems (the prison's Chief Executive Officer for healthcare).[6] In only general terms Count II claims that these defendants were "deliberate[ly] indifferen[t] to the plaintiff's medical needs."[7] More specific factual allegations concerning these defendants (to the extent that they are material to this analysis) are discussed in the immediately following section.

Count III claims that Sergeant T.I. Johnson and Officer E. McNeel "intentionally interfer[ed]" with [Mr. Clair's] prescribed treatment.[8] More specifically, Mr. Clair alleges that these defendants "demanded" that Dr. Leighton rescind a medical authorization (what the parties call a medical "chrono") that assigned Mr. Clair to a cell on the ground floor.[9] (The authorization seems to have been related to Mr. Clair's sometimes elevated blood pressure and related dizziness; the ground-floor accommodation would have saved him from having to climb stairs.) The medical order was eventually rescinded (apparently by Dr. Leighton); its cancellation is, like Mr. Clair's fall on the stairs, a germinal fact in this dispute.

**2. The facts**

**2.1 The single grievance — Rescinding Mr. Clair's ground-floor assignment**

The operative legal issue will be whether Mr. Clair fully exhausted his administrative remedies within San Quentin before filing this suit. *See* 42 U.S.C. § 1997e(a). It is undisputed that Mr. Clair submitted only one relevant grievance to the prison's healthcare office. He exhausted that one grievance through the last level of appeal that was available. The decisive question is the scope of that grievance: Does it embrace (and so did it administratively "exhaust") the claims in Mr. Clair's present complaint?

The grievance process was written and entailed three levels of complaint and review: an initial grievance and decision; an appeal and second review; and, finally, a further appeal and final

---

[6] Compl. – ECF No. 1-1 at 21-22 (¶ 52).

[7] *Id.*

[8] *Id.* at 22 (¶ 53).

[9] *Id.* at 19-20 (¶ 46).

ORDER (No.15-cv-03102-LB)         3

review.[10] The express contents of the grievance are not in dispute. The initial grievance that Mr. Clair submitted recounted that, after his fall, he had been issued a medical "chrono" "to be housed on the ground floor" but that this had been "rescinded."[11] In the "Action requested" section of the grievance form, Mr. Clair asked three questions: "Why was the ground floor medical chrono rescinded?"; "What doctor issued the rescinding order[?]"; and "Why haven't I been seen by a doctor since the rescinding order was issued?"[12] The initial grievance raised no other issue with Mr. Clair's medical care.[13]

The first-tier reviewing official (a nurse who is no longer involved in this case) "denied" Mr. Clair's grievance.[14] In so doing, though, the nurse answered at least two of Mr. Clair's questions, writing:

> Dr. Leighton rescinded your ground[-]floor chrono. Dr. Leighton advised that you were moved from the first tier to the second floor because she thought that it would be fine for you to be housed on the second tier. Dr. Leighton thought that if you can fall on the second tier, you could also fall on the first tier. Dr. Leighton advised that there was no need to see you to change the chrono.[15]

Mr. Clair appealed.[16] His written appeal noted that one of the defendants, Nurse Han, had come to interview him about his grievance, or perhaps about his health generally, but that Mr. Clair found the nurse "hard . . . to understand."[17] (By which Mr. Clair seems to mean that Nurse Han spoke with an accent.) That same appeal also complained that Mr. Clair had been "told three different reasons why the ground[-]floor chrono was rescinded," and that the "ground[-]floor chrono should never have been rescinded."[18] Finally, in his initial appeal, Mr. Clair claimed that

---

[10] *See generally* ECF No. 26-2 at 2-11 (Mr. Clair's grievance forms and prison's decisions); ECF No. 27-2 at 1-10 (same); Cal. Code Regs. tit. 15, § 3084.1 (2011); *Harvey v. Jordan,* 605 F.3d 681, 683 (9th Cir. 2010) (discussing California's three-tier inmate-grievance process).

[11] ECF No. 26-2 at 9.

[12] *Id.*

[13] *See id.*

[14] ECF No. 26-1 at 3; ECF No. 26-2 at 4.

[15] ECF No. 26-2 at 9.

[16] *Id.* at 8-9, 11.

[17] *Id.* at 8.

[18] *Id.* at 11.

ORDER (No.15-cv-03102-LB)                4

Sergeant Johnson had told Dr. Leighton that there were no cells available on the first floor — though (according to Mr. Clair) this was not true.[19] The prison "partially granted" this appeal.[20] Responding to Mr. Clair, Dr. Deems wrote (among other things): "[A]fter your ground[-]floor chrono was rescinded, you were seen by . . . Dr. Leighton on December 7, 2012. . . . [A] ground[-]floor accommodation is not medically indicated at this time. . . . [Y]ou were seen by your PCP [primary-care physician] as requested . . . ."[21]

"[D]issatisfied with the outcome," Mr. Clair filed a second (and final) appeal.[22] Mr. Clair now expanded his written grievances beyond the rescinded ground-floor accommodation. For present purposes, Mr. Clair's statements in his final appeal may be reduced to three subjects. First, he discussed his blood pressure, writing:

> [On February 8, 2013,] I attempted to let [Dr. Leighton] know . . . that I've been having headaches and dizziness and she cut me off and stated to me that I am going to increase this medication. Here today's date is 2/20/13 and my blood pressure has not been checked since the last time.[23]

Next, he recounted a second interview with Nurse Han, again stating that he had a hard time understanding the nurse, and "would like to talk to someone else."[24] Finally, Mr. Clair wrote: "The ground[-]floor chrono need[s] to be reissued to me."[25] The prison denied this last appeal.[26]

**2.2 Allegations related to rescinding the ground-floor accommodation**

The amended complaint makes numerous allegations concerning the rescinded ground-floor accommodation. These fall into three groups. First, Mr. Clair alleges that Sergeant Johnson and Officer McNeel "demanded" that Dr. Leighton "rescind [the] medical order / chrono" that had

---

[19] See id.

[20] ECF No. 26-1 at 3; ECF No. 26-2 at 6.

[21] ECF No. 26-2 at 6.

[22] See id. at 11.

[23] Id.

[24] Id.

[25] Id.

[26] Id. at 2-3; ECF No. 26-1 at 3.

ORDER (No.15-cv-03102-LB)          5

moved Mr. Clair to the ground floor.[27] By so doing, Mr. Clair alleges, these defendants "interfered with the treatment prescribed" to him by Dr. Leighton.[28]

Second, Mr. Clair alleges that, by failing to ensure that an incident report was written concerning his fall, Sergeant Madding contributed to his being denied "necessary accommodations," like being moved "to the ground level so he does not risk falling again."[29]

Third, Mr. Clair alleges that Dr. Tootell and Dr. Deems have denied his repeated "requests and subsequent appeals for a medical chrono" authorizing him "to be housed on the ground floor."[30] That general statement is all the complaint says (in this regard) about Dr. Tootell. As for Dr. Deems, Mr. Clair goes on to allege that this defendant denied his appeal "[w]ithout addressing any of Mr. Clair's arguments regarding his need for a ground[-]floor chrono."[31] Mr. Clair contends that Dr. Deems knew of the plaintiff's medical situation and so could have understood and appreciated "the medical necessity of Mr. Clair's chrono request."[32] "By refusing to provide Mr. Clair with a medical chrono to be housed on the ground floor," the plaintiff alleges, "Dr. Deems personally denied Mr. Clair . . . adequate medical care . . . ."[33]

Three defendants — Officer Terry, Dr. Grant, and Dr. Garrigan — are not mentioned in any allegation concerning the rescinded ground-floor accommodation.[34]

**2.3 Other allegations**

The complaint makes other allegations about how (according to Mr. Clair) the defendants have variously failed to provide him with adequate medical care. These include such things as not using handcuffs appropriate to his shoulder problems, failing to ensure that medical staff followed up on

---

[27] Compl. – ECF No. 1-1 at 19 (¶ 46).

[28] *Id.*

[29] Am. Compl. – ECF No. 16 at 2-3 (¶ 39e-f).

[30] *Id.* at 3 (¶ 44b).

[31] *Id.* at 3-4 (¶ 44c-d).

[32] *Id.* at 4 (¶ 44e).

[33] *Id.* (¶ 44f).

[34] *See* Compl. – ECF No.1-1, *passim*; Am. Compl. – ECF No. 16, *passim*.

ORDER (No.15-cv-03102-LB)            6

prescribed courses of treatment, and inadequately addressing symptoms of concussion after his fall.[35] The shared feature of all such allegations (insofar as is relevant to this analysis) is that they do not relate to the rescission of the ground-floor accommodation. Because the court concludes that the grievance in question encompasses only the rescinded ground-floor accommodation, it is not necessary to further enumerate the complaint's other allegations of insufficient medical care. (The Analysis below will mention these as needed.) The court's earlier screening order set these other allegations out in greater detail.[36] Interested readers can refer to that order or, of course, to Mr. Clair's complaint.[37]

### 3. The previous screening order and the amended complaint

The court previously screened Mr. Clair's initial complaint under 28 U.S.C. § 1915A.[38] So far as is relevant here, the court dismissed Mr. Clair's claims against Dr. Tootell and Dr. Deems with leave to amend.[39] The court directed Mr. Clair to amend his complaint and, if he could, include allegations showing that these defendants had personally participated in a constitutional violation.[40] Mr. Clair has since amended his complaint.[41] He makes no new allegations against Dr. Tootell.[42] The court has not yet screened Mr. Clair's amendments under § 1915A. The court makes screening dispositions as appropriate in the Analysis below.

---

[35] *See* Compl. – ECF No. 1-1 at 11-12, 15-16 (¶¶ 28-29, 35, 41).

[36] ECF No. 8.

[37] *See* Compl. – ECF No. 1-1; Am. Compl. – ECF No. 16.

[38] ECF No. 8.

[39] *Id.* at 5.

[40] *Id.*

[41] Am. Compl. – ECF No. 16.

[42] *See id.*, *passim*.

# GOVERNING LAW

## 1. Summary judgment

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh conflicting evidence, and inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). More precisely, "[a]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## 2. Prison Litigation Reform Act — Exhausting administrative remedies

"The Prison Litigation Reform Act [PLRA] requires that a prisoner exhaust available administrative remedies before bringing a federal action concerning prison conditions." *Griffin v. Arpaio,* 557 F.3d 1117, 1119 (9th Cir. 2009) (citing 42 U.S.C. § 1997e(a)). The PLRA more fully provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016). Section 1997e(a) requires an inmate to pursue every available step of the prison grievance process. *See Woodford v. Ngo,* 548 U.S. 81, 90 (2006); *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010) ("a [California state] prisoner exhausts the grievance process when he completes the third level" of review). The prisoner must fully exhaust administrative remedies before filing suit. *E.g., McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).

If the prisoner has failed to exhaust, it is proper to dismiss without prejudice those parts of the complaint that are barred by § 1997e(e). *Jones v. Bock*, 549 U.S. 199, 223-24 (2007); *Lira v. Herrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005). Exhaustion is mandatory; it is no longer left to the discretion of the district court. *Woodford,* 548 U.S. at 84 (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino v. Baca,* 747 F.3d 1162, 1170 (9th Cir. 2014). The proper device for

raising failure to exhaust is normally by motion for summary judgment under Rule 56. *Id.* at 1166. ("In the rare event that a failure to exhaust is clear on the face of the complaint," however, "a defendant may move for dismissal under Rule 12(b)(6)." *Id.*)

Failure to exhaust administrative remedies under the PLRA "is an affirmative defense the defendant must plead and prove." *Jones*, 549 U.S. at 204, 216. Prisoner complaints are not required to plead exhaustion. *Id.* at 215-17. If the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust, then a defendant is entitled to summary judgment. *Albino*, 747 F.3d at 1166. The defendant bears the "ultimate burden" of proving that the prisoner did not exhaust available administrative remedies. *See id.* at 1172, 1176 (citing *Jones, supra*).

The PLRA does not require dismissing an entire complaint where the prisoner has exhausted some, but not all, of his claims. *Jones*, 549 U.S. at 222-24; *Lira v. Herrera*, 427 F.3d 1164, 1170 (9th Cir. 2005). When the exhausted and unexhausted claims in a complaint are not too intertwined with one another, the court should simply dismiss the unexhausted claims and allow the exhausted claims to proceed. *Lira*, 427 F.3d at 1175-76.

Finally, if a prisoner's claim "on its face" is "frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief," then the court "may dismiss" the claim "without first" assessing exhaustion. *See* 42 U.S.C. § 1997e(c)(2); 28 U.S.C. § 1915A.

## ANALYSIS

The basic question is whether Mr. Clair exhausted his administrative remedies before bringing this suit. It is undisputed that Mr. Clair pursued his one relevant grievance through all three levels of available review. The more precise question — and the decisive issue — is one of scope: Are the claims in the Amended Complaint fairly comprised in the one administrative grievance that Mr. Clair fully exhausted? If the complaint states claims that are within the scope of the exhausted grievance, then those claims survive the defendants' summary-judgment motion. If the complaint

states claims that are outside the scope of the exhausted grievance, then those claims must be dismissed.

The scope inquiry relates to the underlying purposes of the exhaustion doctrine. The Ninth Circuit has explained: "Requiring exhaustion provides prison officials a 'fair opportunity to correct their own errors' and creates an administrative record for grievances that eventually become the subject of federal court complaints." *Reyes*, 810 F.3d at 657 (quoting *Woodford*, 548 U.S. at 657). Consequently, as a general rule:

> A grievance . . . need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.

*Griffin*, 557 F.3d at 1120; *accord Schoppe-Rico v. Horel*, 2012 WL 4477983, *3 (N.D. Cal. Sept. 27, 2012).

"[I]t is the prison's requirements," however, "and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218. Governing California regulations confine a grievance to the matters and personnel named in the first-level grievance. Cal. Code Regs. tit. 15, § 3084.1(b).[43] Moreover, "[t]he inmate is limited to one issue or related set of issues per . . . [grievance] form submitted." § 3084.2(a)(1). The regulations direct the inmate filing a grievance to "describe the specific issue under appeal and the relief requested." § 3084.2(a). "The inmate . . . shall state all facts known and available to him/her regarding the issue being appealed . . . ." § 3084.2(a)(4). Furthermore, "[t]he inmate . . . shall list all staff member(s) involved and shall describe their involvement in the issue. . . . [T]he inmate . . . shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal." § 3084.2(a)(3). Matters and personnel not described in the first-level grievance form are outside the grievance's scope: "Administrative remedies shall not be considered exhausted relative to any *new issue, information, or person later named* by the

---

[43] Section citations in this opening part of the Analysis refer to Title 15 of the California Code of Regulations.

ORDER (No.15-cv-03102-LB)    10

[inmate] *that was not included in the originally submitted*" grievance form. § 3084.1(b) (emphases added).

### 1. General holdings

These rules, taken together with the express content of Mr. Clair's grievance, and the allegations in his amended complaint, lead the court to three general and a host of defendant-specific conclusions.

The first general conclusion is that Mr. Clair's grievance is confined to the basically two issues contained in his initial grievance form of November 23, 2012: (1) the rescinding of his ground-floor accommodation; and (2) the fact that he had not seen a doctor after the "rescinding order was issued." (*See* ECF No. 26-2 at 9.) The undisputed facts further limit the latter grievance and any claim related to it. It is undisputed that, after the rescission and his initial grievance, Mr. Clair *did* see his primary physician, Dr. Leighton, on December 2, 2012 and again on December 7, 2012. (*See* ECF No. 26-2 at 2, 6.) If Mr. Clair has a viable claim based on this aspect of his initial grievance, then, it can only be a claim for the time period between when the ground-floor "chrono" was rescinded (apparently on November 15, 2012), and December 2, 2012, when Dr. Leighton saw him. (The correct starting date for this period is perhaps not the date of the rescission, but the date of Mr. Clair's initial grievance. The court does not have sufficient material before it to say conclusively; but that it is not important to the present point, which is simply that Mr. Clair has a claim, not for a wholesale failure to see his doctor after the ground-floor "chrono" was rescinded, but only for some period that he had to wait before seeing Dr. Leighton.) In short, Mr. Clair's grievances are confined to (1) the cancellation of his ground-floor accommodation, and (2) the "delay," after that cancellation, before he was able to see Dr. Leighton.

The second general holding is that Mr. Clair's general treatment claims — meaning, his basic charge that prison officials were "deliberately indifferent" to his medical needs — are not embraced within, and so not exhausted by, his more specific initial grievance concerning the cancellation of his ground-floor assignment. *See Griffin*, 557 F.3d at 1118-21 (initial grievance demanding a bunk ladder did not embrace grievance that staff had disregarded his assignment to

lower bunk); *Schoppe-Rico*, 2012 WL 4477983 at *13-15 (initial grievances concerning property theft and verbal harassment did not alert prison staff to deliberate-indifference-to-safety and excessive-force grievances).

The third general holding is that issues raised for the first time in Mr. Clair's second- and third-level appeals are outside the scope of his grievance. Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2(a)(1); *Henderson v. Rodriguez*, 2009 WL 817750, *2-*3 (E.D. Cal. Mar. 27, 2009) (holding that prisoner could not "further expand the scope of his grievance" by raising new, albeit related, issues beyond those stated in his initial grievance). His second-level review raised two new issues: the difficulty he had understanding Nurse Han in a medical interview conducted on November 28, 2012; and the claim that Sergeant Johnson wrongly told Dr. Leighton that "there [were] no cells open on the first tier to move [Mr. Clair] into." (ECF No. 26-2 at 8, 11.) His third-level review raised three new issues: Mr. Clair complained that he had difficulty understanding Nurse Han in an interview on December 7, 2012; he complained about his blood pressure and that it had not been checked in 12 days — pointing to events on and after February 8, 2013; and, finally, Mr. Clair complained that he had been moved to a cell "with an upper bunk rail" on which he kept hitting his head and shoulder. (ECF No. 26-2 at 11.) All these complaints are outside the scope of his initial grievance. Any claims based on these facts were consequently not exhausted.

2. **Specific holdings: Defendants and claims**

   **2.1 Officer Terry; Dr. Grant; Dr. Garrigan**

Defendants Terry, Grant, and Garrigan are, under the allegations of the complaint, in no way connected to the rescission of Mr. Clair's ground-floor "chrono" or to the waiting period that Mr. Clair experienced before seeing Dr. Leighton after that "chrono" was cancelled. None of these defendants was named in Mr. Clair's initial grievance — or, for that matter, in his second- or third-level appeals. The claims against these defendants are dismissed without prejudice.

**2.2 Dr. Leighton — Allegations not concerning rescinded "chrono"**

The complaint's factual allegations concerning Dr. Leighton have nothing to do with the rescission of the ground-floor accommodation. Mr. Clair instead complains that, in an examination that appears to have precede both his fall on the stairs and the cancellation of the ground-floor "chrono," Dr. Leighton conducted an inadequate medical examination by failing to have his handcuffs removed. (Compl. – ECF No. 1-1 at 11 [¶¶ 28-29].) He also complains that, after an October 9, 2012 examination, Dr. Leighton failed to ensure that the prison staff carried out her plan for controlling his blood pressure. (*Id.* at 11-12 [¶¶ 30-35].) Neither item appears in Mr. Clair's exhausted grievance. Insofar as Count II is directed against Dr. Leighton for the conduct alleged in ¶¶ 24-35 of the complaint, Count II is dismissed without prejudice for failure to exhaust administrative remedies.

**2.3 Sergeant Madding**

The allegations against Sergeant Madding (named in Count I) are connected to the rescission of the ground-floor "chrono" insofar as they assert that Sergeant Madding's failure to submit an incident report on Mr. Clair's fall on the stairs, or to require another officer to submit a report, contributed to the ground-floor accommodation being rescinded. (*See* Compl. – ECF No. 1-1 at 21 [¶ 51]; Am. Compl. – ECF No. 16 at 4 [¶ 4].).) Mr. Clair's grievance does not name Sergeant Madding or mention the absence of an incident report. (*See* ECF No. 26-2 at 8-11). That grievance thus could not have "alert[ed] the prison to [this] problem and given it a "fair opportunity to correct" it. *See Griffin*, 557 F.3d at 1120 ("alert"); *Reyes*, 810 F.3d at 657 (quoting *Woodford*, 548 U.S. at 657) ("fair opportunity"). The claim against Sergeant Madding is therefore dismissed without prejudice.

**2.4 Officer McNeel; Sergeant Johnson**

Count III claims that Officer McNeel and Sergeant Johnson "intentionally interfer[ed]" with Mr. Clair's prescribed treatment (meaning, his assignment to a ground-floor cell) by "demand[ing]" that Dr. Leighton rescind the ground-floor "chrono." (Compl. – ECF No. 1-1 at 19-

20, 22 [¶¶ 46, 53].) This claim does not sufficiently arise in Mr. Clair's grievance. It appears nowhere in Mr. Clair's initial grievance form. Nor is it fairly encompassed within his second- and third-level appeals. This is absolutely clear with respect to Officer McNeel. Officer McNeel is not mentioned anywhere in Mr. Clair's grievance. (*See* ECF No. 26-2 at 8-11.) The situation is only slightly closer with regard to Sergeant Johnson. The initial grievance form names this defendant, but on an entirely different, and apparently entirely ancillary, matter. (*Id.* at 9.) The first time that something like an "interference" allegation against Sergeant Johnson arises is in the second-level review. (*See id.* at 11.) The claim there is not that the sergeant "demanded" that Dr. Leighton rescind the medical "chrono." Rather, Mr. Clair alleges that Sergeant Johnson told Dr. Leighton that there was no ground-floor cell available to assign to Mr. Clair — which Mr. Clair says was untrue. (*See id.*)

The court thinks that this did not adequately advise the prison that Mr. Clair had a grievance against Sergeant Johnson for "interfering" with Dr. Leighton's medical prescription. This is especially true given the regulatory demand that grievances are confined to the issue raised in the initial form (and, again, nothing like Mr. Clair's complaint against Sergeant Johnson appears in that first form). See Cal. Code Regs., tit. 15, § 3084.1(b). The court's conclusion is supported by the fact that, in addressing Mr. Clair's first grievance and subsequent appeals, the prison never mentions Sergeant Johnson, in any capacity, and does not mention any prison official "interfering" with Mr. Clair's medical treatment. (*See* ECF No. 26-2 at 2-6.)[44] This last consideration is not itself definitive — or prisons could thwart judicial review of inmate grievances simply by ignoring them — but it does suggest that the grievance did not alert the prison to Sergeant Johnson's allegedly "interfering" with Mr. Clair's medical care. And that is consistent with the absence of such a complaint from the face of Mr. Clair's grievance forms — especially, again, the first one. With respect to both Officer McNeel and Sergeant Johnson, then, Count III is dismissed without prejudice. *See Griffin*, 557 F.3d at 1118-21; *cf. Reyes*, 810 F.3d at 659 (grievances concerning

---

[44] At one point, the prison's decision block-quotes Mr. Clair's second-level appeal, and so picks up *his* reference to Sergeant Johnson (ECF No. 26-2 at 6); but the prison itself never mentions the sergeant or any charge of "interference."

"denial of pain medication" encompassed complaint against prison's Pain Management Committee; though grievance did not name committee, prison "easily identified . . . [its] involvement in the [challenged] issue").

**2.4 Nurse Han**

The deliberate-indifference claim against Nurse Han is dismissed with prejudice. The initial grievance form does not mention Nurse Han. Mr. Clair mentions him in subsequent appeals, but complains only that he had a hard time understanding Nurse Han during medical interviews. The claim against Nurse Han thus was not administratively exhausted. Furthermore, no viable constitutional claim against Nurse Han rests in Mr. Clair's difficulty in understanding this defendant. In other words, Mr. Clair's § 1983 claim against Nurse Han fails to state a claim on which relief may be granted. Mr. Clair's claim against Nurse Han is therefore dismissed with prejudice. *See* 42 U.S.C. § 1997e(c)(2); 28 U.S.C. § 1915A.

**2.5 Dr. Tootell; Dr. Deems**

Count III alleges that Dr. Tootell and Dr. Deems have been deliberately indifferent to Mr. Clair's medical needs by denying his repeated "requests and subsequent appeals for a medical chrono" authorizing him "to be housed on the ground floor." (Am. Compl. – ECF No. 16 at 3 [¶ 44b].) Dr. Deems reviewed Mr. Clair's second-level appeal. (ECF No. 26-2 at 5-6, 8.) Dr. Tootell, who is San Quentin's chief medical officer, does not seem to have had a direct role in reviewing any stage of Mr. Clair's grievance. Nor was Dr. Tootell named as a participant in the relevant underlying events. (*See* ECF No. 26-2, *passim*.)

The court addressed the claims against these defendants in its earlier screening order under 28 U.S.C. § 1915A. (ECF No. 8.) The court there dismissed the claims against both these defendants, but gave Mr. Clair leave to amend his complaint. To state a minimally viable claim against these defendants, the court wrote, Mr. Clair would have to allege facts showing that they personally participated in a constitutional violation. (*Id.* at 5) (citing *Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011), and *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)). Mr. Clair has since

amended his complaint but adds no new allegations concerning Dr. Tootell. (*See* Am. Compl. – ECF No. 16, *passim*.) Because it appears that the plaintiff can allege no facts to save his claim against this defendant, all claims against Dr. Tootell are dismissed with prejudice.

Mr. Clair's amended complaint adds allegations regarding Dr. Deems. These assert that Dr. Deems denied the second-level appeal "[w]ithout addressing any of Mr. Clair's arguments regarding his need for a ground[-]floor chrono." (*Id.* at 3-4 [¶ 44c-d)]) Mr. Clair also alleges that Dr. Deems knew of his medical situation and so could have appreciated "the medical necessity of Mr. Clair's chrono request." (*Id.* at 4 [¶ 44e].) "By refusing to provide Mr. Clair with a medical chrono to be housed on the ground floor," the plaintiff alleges, "Dr. Deems personally denied Mr. Clair . . . adequate medical care . . . ." (*Id.* [¶ 44f].) Of the allegations and claim against Dr. Deems, three things can be said.

First, to the extent that Count III is directed only at Dr. Deems's second-level review of the grievance in question, it obviously cannot have been encompassed in the initial grievance form, and so was not exhausted. Second, substantively, Mr. Clair has no viable claim against Dr. Deems for how this defendant handled that second-level review. To state a claim under 42 U.S.C. § 1983, a plaintiff must show that a constitutional right was violated. *See, e.g., West v. Atkins*, 487 U.S. 42, 48 (1988). But there is no federal constitutional right to a state prison-grievance system. *See, e.g., Ramirez v. Galaza*, 334 F.3d 850, 860-61 (9th Cir. 2003); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (prison grievance procedure is procedural right that does not give rise to protected liberty interest). Consequently, Mr. Clair's claim against Dr. Deems "lacks the necessary constitutional foundation," *Ramirez*, 334 F.3d at 860, and this defendant cannot be held liable under § 1983 for failing to find in Mr. Clair's favor, *see id.* Insofar as Mr. Clair's claim against Dr. Deems is based on how the latter handled Mr. Clair's appeal, that claim is dismissed with prejudice. Third, and last, it is conceivable that Mr. Clair rests his deliberate-indifference claim against Dr. Deems on other facts than the second-level review of this particular grievance. That is to say, judging from Mr. Clair's allegations, it is possible that he has in mind other incidents in which Dr. Deems personally denied Mr. Clair some medical treatment despite knowing that this inmate had relevant health problems. But the initial grievance form made no such claim against

1  Dr. Deems, and certainly mentioned no facts to support such a claim. In sum, to the extent that Mr.
2  Clair has a viable deliberate-indifference claim against Dr. Deems for conduct outside the appeal
3  of this grievance, that claim has not been exhausted.

### 3. What remains?

What remains of Mr. Clair's complaint? Which claims survive summary judgment to proceed on their merits? And against which defendants? The remaining claims can only be for the two items that Mr. Clair's initial grievance encompassed: (1) the rescinding of his ground-floor accommodation; and (2) the fact that he did not see a doctor for some period after the "rescinding order was issued." (*See* ECF No. 26-2 at 9.) It is harder to say which defendants are the objects of these claims. The undisputed facts, the prison's own written decisions, suggest that Dr. Leighton rescinded the ground-floor authorization. (*See id.* at 4.) But the complaint makes no allegation against Dr. Leighton for this. As for the "delay" claim, it is entirely unclear who is meant to be, or who should be, the target defendant.

On both heads, it may be worth recalling that the only defendant that Mr. Clair's initial grievance names is Sergeant Johnson — though, again, on a tangential matter that never factors into Mr. Clair's substantive grievance or his complaint. Strictly speaking, under California regulations, this failure to name the personnel involved in the relevant events could have led the prison to reject Mr. Clair's grievance. *See* Cal. Code Regs., tit. 15 § 3084.2(a)(3). Because the prison ignored this procedural defect and addressed Mr. Clair's appeal, however, the defendants could not point to this flaw now to argue that Mr. Clair's claims were not properly exhausted. *Reyes*, 810 F.3d at 657-58. The Ninth Circuit's reasoning in *Reyes* dissuades this court from dismissing Mr. Clair's "rescission" and "delay" grievances, for failure to exhaust, because they do not specifically name their object defendants.

The correct resolution of this situation thus seems to be — and the court's holding is — as follows: Mr. Clair fully exhausted his administrative grievance with respect to the two items (rescission and delay) identified above. There is currently no defendant who is the object of these claims. The court therefore dismisses these claims without prejudice; Mr. Clair has leave to file a

Second Amended Complaint that is limited to these exhausted claims, and which clearly identifies their object defendants.

The court's exhaustion analysis expresses no view on the merits of Mr. Clair's claims.

## CONCLUSION

For the reasons given above, and as more particularly described above, the court partly grants and partly denies the defendants' motion for summary judgment. The plaintiff may amend his complaint a second time, for the purpose described above; if he chooses to do so, he must file his amendment within 21 days of this order.

This disposes of ECF No. 25.

**IT IS SO ORDERED.**

Dated: May 31, 2016

_____
LAUREL BEELER
United States Magistrate Judge